[Cite as *State v. Stennett*, 2022-Ohio-4645.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                         :

    Plaintiff-Appellee,           :

                                      No. 111424

    v.                                  :

DEMETRIUS STENNETT,                    :

    Defendant-Appellant.          :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 22, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-653646-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Lisa J. Turoso, Assistant Prosecuting Attorney, *for appellee.*

Law Office of Jaye M. Schlachet and Eric M. Levy, *for appellant.*

SEAN C. GALLAGHER, A.J.:

{¶ 1} Demetrius Jovan Stennett appeals his conviction for sexual battery, a violation of R.C. 2907.03(A)(2), entered upon a guilty plea. For the following reasons, we affirm.

{¶ 2} The victim and Stennett described themselves as best friends. One day after the victim had been drinking heavily at a party, the victim was dropped off at Stennett's home. The victim, by all accounts, was inebriated. Stennett had asked her to come over, promising to make breakfast and allow her to get cleaned up for work the next morning. Sometime during the evening, Stennett engaged in sexual conduct with the victim. After the victim reported the crime and officers arrested Stennett, he conceded to being aware that the victim was substantially impaired and was unable to consent to the sexual conduct that undisputedly occurred. Although the state indicted Stennett on two rape charges, a plea offered on the morning of the bench trial reduced the charges to a single count of sexual battery under R.C. 2907.03(A)(2), a third-degree felony offense.

{¶ 3} Stennett accepted the plea offer and entered a guilty plea following the colloquy. Stennett was sentenced to a four-year term of imprisonment along with the attendant Tier III reporting requirements under R.C. Chapter 2950. This timely appeal followed, but the assignments of error will be reordered for the sake of clarity.

{¶ 4} In the third assignment of error, Stennett claims that the four-year term of imprisonment imposed upon the violation of R.C. 2907.03(A)(2) does not comply with the sentencing provisions under R.C. 2929.14(A)(3)(a). Under that subdivision, "the prison term shall be a definite term of twelve, eighteen, twenty-four, thirty, thirty-six, forty-two, *forty-eight*, fifty-four, or sixty *months*" for a third-degree felony violation of R.C. 2907.03. (Emphasis added.) R.C. 2929.14(A)(3)(a).

According to Stennett, the imposition of the four-year term of imprisonment, instead of a 48-month term, does not comply with the letter of the sentencing statute and that defect renders his sentence to be contrary to law.

{¶ 5} Although the state's appellate briefing is largely unresponsive to Stennett's argument, it must be recognized that the Ohio Supreme Court recently addressed the question of whether a sentencing entry must precisely track the language of the applicable sentencing statute. *State v. Leegrand*, Slip Opinion No. 2022-Ohio-3623, ¶ 1. In answering that question in the negative, the Ohio Supreme Court concluded that a de minimis or indistinguishable difference between the sentencing entry and the statutory language does not necessarily amount to reversible error. *Id.* at ¶ 9. In *Leegrand*, the offender was sentenced to a term of "life in prison with eligibility of parole after 15 years." *Id.* at ¶ 8. The applicable statutory section, R.C. 2929.02(B)(1), required the trial court to impose "an indefinite term of fifteen years to life." *Id.* at ¶ 5. After applying the ordinary principles of statutory construction, the *Leegrand* majority concluded that the legislature intended the minimum sentence for murder in violation of R.C. 2903.02(B) to be 15 years, with a maximum term of life. *Id.* at ¶ 7. The language of the sentencing entry accomplished that intent. *Id.* Although a preference for strict adherence to the statutory language was noted, it was held that minor, de minimis deviations from the statutory language are permissible so long as the sentencing entry "does neither more nor less" than the statute requires. *Id.* at ¶ 8.

{¶ 6} In this case, the applicable sentencing statutory provision authorizes the trial court, in pertinent part, to impose a 48-month term of imprisonment. Instead of adhering to the statutory language, the trial court expressed the length of imprisonment in terms of years, imposing a four-year prison sentence under R.C. 2929.14(A)(3)(a).

{¶ 7} In support of his argument challenging that sentence, Stennett cites *State v. Hariston*, 8th Dist. Cuyahoga No. 102606, 2015-Ohio-4500, ¶ 37, for the proposition that a sentence imposed in terms of months is not the same as a sentencing provision authorizing a term of imprisonment expressed in terms of days. In *Hariston*, the offender was sentenced to a term of six months under R.C. 2929.24(A)(1), which authorizes a maximum jail sentence of 180 days. As the *Hariston* panel recognized, six months (or half of a year) is not the same as 180 days because of the differing number of days in any given month. *Id.*, citing *State v. Pierce*, 4th Dist. Meigs No. 10CA10, 2011-Ohio-5353, ¶ 10. Thus, a term of six months in jail could exceed the maximum available sentence of 180 days. *Leegrand* does not alter *Hariston's* conclusion. Imposing a six-month term of imprisonment does not convey the same meaning as the legislatively authorized 180-day period of confinement even under the *Leegrand* analysis because of the variations in the length of any given month. *Hariston* is inapplicable to the issues at hand.

{¶ 8} Unlike the difference in expressing a 180-day jail sentence in terms of months, imposing a 48-month prison sentence in terms of years describes an equal time frame. Under a general understanding of the computation of time, a one-year

period equals twelve months. Therefore, a four-year term is equal to 48 months, either of which can also be expressed as four periods of 365 days.[1] The four-year prison term in this case is equal to the 48-month term authorized under R.C. 2929.14(A)(3)(a). Under the reasoning set forth in *Leegrand*, the sentencing entry "does neither more nor less" than R.C. 2929.14(A)(3)(a) requires. *Leegrand,* Slip Opinion No. 2022-Ohio-3623, at ¶ 8. Although we agree that the best-practices approach would require strict adherence to the language of the applicable sentencing statute, the final entry of conviction challenged in this case conveys the same meaning as the statutory language, and therefore, no reversible error occurred.[2] *Id.* at ¶ 8.

**{¶ 9}** Further, we note that in practical terms, and irrespective of the above legal analysis, there is no difference to the length of Stennett's prison sentence whether described in terms of 48 months or four years. According to the "notice of commitment and calculation of sentence" made part of the record in this case, Stennett's date of admission to prison was March 24, 2022. When applying the 18-

---

[1] It is recognized that a "year" is actually defined as 365 and 1/4 days; however, that distinction in not relevant to this part of the discussion. Computation of prison release dates includes recognition of leap years such that a year under Ohio sentencing law reflects a period of 365 days, with the Ohio Department of Rehabilitation and Correction accounting for the extra day of incarceration for every leap year occurring during the given sentence. *See, e.g., State v. Henderson*, 161 Ohio St.3d 285, 2020-Ohio-4784, 162 N.E.3d 776, ¶ 11.

[2] Stennett also cites *State v. Sipperley*, 6th Dist. Sandusky No. S-19-053, 2020-Ohio-4609, ¶ 18, and *State v. Just*, 9th Dist. Wayne No. 12CA0002, 2012-Ohio-4094, ¶ 46, both of which found reversible error in expressing sentences in terms of months versus years. Both cases predate *Leegrand* and are no longer valid.

day credit for time served, his putative release date is calculated to be March 4, 2026.[3] Thus, whether we add 48 months or four years to the March 24, 2022 admission date, the release date is the same. Any error with the sentencing language would be harmless error. The third assignment of error is overruled.

{¶ 10} In the first two assignments of error, Stennett claims that the four-year term of imprisonment is clearly and convincingly contrary to law because the factual underpinnings of the relevant principles and purposes of felony sentencing under R.C. 2929.11 and 2929.12 were not supported by the record. Stennett claims that the sentence imposed on the underlying felony is reviewable under R.C. 2953.08(G) and paragraph 23 of *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231. Stennett's arguments are misplaced.

{¶ 11} Under a more recent pronouncement, the Ohio Supreme Court's conclusion in *Marcum* at paragraph 23 was deemed dicta that cannot form the basis for expansion of the relevant sentencing review law. Although, generally speaking, obiter dictum may be relied upon as persuasive authority, *see Browne v. Artex Oil Co.*, 158 Ohio St.3d 398, 2019-Ohio-4809, 144 N.E.3d 378, ¶ 27, the Ohio Supreme Court deemed it reversible error to rely on *Marcum* for the proposition that an appellate court may review whether the record clearly and convincingly supports the sentencing factors and consideration under R.C. 2929.11 and 2929.12. *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 27. "R.C. 2929.11

---

[3] The release date accounts for the date of admission and the 2024 leap year that occurs during service of Stennett's sentence. *See, e.g., Henderson*, at ¶ 11.

and 2929.12 are not among the statutory provisions listed in R.C. 2953.08(G)(2)(a) [and] [o]nly R.C. 2929.13(B) and (D), 2929.14(B)(2)(e) and (C)(4), and 2929.20(I) are specified." *Id.* at ¶ 28. The unanimous court held that "R.C. 2953.08(G)(2)(b) therefore does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *Jones* at ¶ 39.[4]

---

[4] Strict adherence to *Jones's* conclusion, that a court of review is precluded from reviewing the R.C. 2929.11 and 2929.12 sentencing factors and principles of felony sentencing under R.C. 2953.08, was short lived. In *State v. Bryant*, Slip Opinion No. 2022-Ohio-1878, ¶ 31, a majority of the Ohio Supreme Court concluded that if a trial court considers a factor not codified under R.C. 2929.11 or 2929.12, the sentence imposed is contrary to law. *Id. Jones* concluded otherwise: "an appellate court's determination that the record does not support a sentence does not equate to a determination that the sentence is 'otherwise contrary to law' as that term is used in R.C. 2953.08(G)(2)(b)" for the purposes of appellate sentencing review. *Jones* at ¶ 32.

As could be pertinent to this case, the lingering question from *Bryant* remains: how does an appellate court review to determine whether a trial court considered a factor not expressly included within R.C. 2929.11 if the appellate sentencing review statute (R.C. 2953.08) precludes a court of review from reviewing the sentencing factors under R.C. 2929.11 or the principles of felony sentencing under R.C. 2929.12 considered by the trial court? In light of the fact that Stennett has not claimed that his sentence was based on a consideration of facts not authorized under R.C. 2929.11 or 2929.12, we need not delve into the difference in the appellate standard of sentencing review created by *Bryant*. For the purposes of this appeal, *Jones* controls over the narrower conclusion reached in *Bryant*.

And, for the sake of clarity, it is not a mere "assumption" that R.C. 2953.08 is the source of appellate sentencing review. A defendant's right to appeal a sentence is derived from R.C. 2953.08. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 10. "R.C. 2953.08 specifically and comprehensively defines the parameters and standards—including the standard of review—for felony-sentencing appeals. [Courts] need look no further" because R.C. 2953.08 "limits appellate review" of final sentences. *Marcum* at ¶ 21. According to *Bryant* and *State v. Patrick*, 164 Ohio St.3d 309, 2020-Ohio-6803, 172 N.E.3d 952 (concluding that a constitutional challenge to a sentence can be maintained despite the relevant prohibition against appellate review in R.C. 2953.08), however, courts of review must look "further" than R.C. 2953.08 to define the scope and standard of appellate sentencing review. *See State v. McCrory*, 167 Ohio St.3d 1502,

{¶ 12} Accordingly, under R.C. 2953.08(G)(2), an appellate court may reverse or modify a sentence only if the appellate court clearly and convincingly finds that the record does not support the findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or if the sentence is contrary to law. R.C. 2953.08(G), however, "does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *Jones*, at ¶ 39.

{¶ 13} A defendant's right to appeal a sentence is derived from R.C. 2953.08. *Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, at ¶ 10. R.C. 2953.08(D)(1) is "a statutory limit on a court of appeals' jurisdiction to hear an appeal." *State v. Noling*, 136 Ohio St.3d 163, 2013-Ohio-1764, 992 N.E.2d 1095, ¶ 22; *State v. Gwynne*, 158 Ohio St.3d 279, 2019-Ohio-4761, 141 N.E.3d 169, ¶ 9, fn. 1. We cannot review the sentence imposed under the arguments as presented by Stennett, which are entirely premised on the review of the factual basis for the trial court's consideration of R.C. 2929.11 and 2929.12. The first and second assignments of error are overruled.

{¶ 14} In the fourth and final assignment of error, Stennett claims his plea was not knowingly, voluntarily, or intelligently entered because although the trial court advised him that he would be classified as a Tier III sex offender for life, he was not advised of all collateral consequences attendant thereto.

---

2022-Ohio-3029, 194 N.E.3d 366, ¶ 4 (Stewart, J., dissenting). It is, therefore, an open question whether appellate sentencing review is controlled by the legislature or the judiciary. *Id.* at ¶ 8.

{¶ 15} Pursuant to Crim.R. 11(C)(2)(a), before accepting a plea of guilty in a felony case, the trial court must address the defendant personally and determine "that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved * * *." Crim.R. 11(C)(2)(a) and (b) identify the nonconstitutional rights that must be addressed before accepting a plea of guilty, while Crim.R. 11(C)(2)(c) identifies the constitutional rights that must be explained.

{¶ 16} In *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, the Ohio Supreme Court indicated that its prior caselaw suggesting different tiers of compliance with Crim.R. 11(C) had "muddled the analysis" and unduly complicated what should be a straightforward inquiry. *Id.* at ¶ 17. The court determined that when reviewing a plea challenge under Crim.R. 11, aside from two limited exceptions, the "traditional rule" applies under which "a defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *Id.* at ¶ 16, citing *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). "The test for prejudice is 'whether the plea would have otherwise been made.'" *Id.*, quoting *Nero* at 108. Prejudice is required to be established on the face of the record. *Id.* at ¶ 24, citing *Hayward v. Summa Health Sys./Akron City Hosp.*, 139 Ohio St.3d 238, 2014-Ohio-1913, 11 N.E.3d 243, ¶ 26.

{¶ 17} One exception where no showing of prejudice is required occurs when a trial court fails to explain the constitutional rights set forth in Crim.R. 11(C)(2)(c).

*Dangler* at ¶ 14. This is distinguished from "when a trial court fails to fully cover other 'nonconstitutional' aspects of the plea colloquy," in which case "a defendant must affirmatively show prejudice to invalidate a plea." *Id.* at ¶ 14, citing *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 17. The other exception to the prejudice component of the rule requires "a trial court's '*complete failure*' to comply with a portion of Crim.R. 11(C)." *Id.* at ¶ 15.

{¶ 18} Properly understood, in reviewing a Crim.R. 11 challenge, the questions to be answered are simply: "(1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?" *Dangler* at ¶ 17.

{¶ 19} The Ohio Supreme Court has overruled arguments similar to the ones Stennett raises herein, declining to impose a specific requirement that a trial court notify an offender of every collateral consequence of a sex offender registration requirement. "When a trial court has told a defendant that he is subject to the sex-offender-registration scheme, that defendant is entitled to have his conviction vacated for lack of a more complete explanation only if he demonstrates prejudice." *Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, at ¶ 2. In *Dangler*, the trial court had simply advised the offender that "he would be classified as a Tier III sex offender and would be required to register for the rest of his life." *Id.* at ¶ 7. Based on that advisement, the Ohio Supreme Court determined that the trial court

had not completely failed to comply with Crim.R. 11(C)(2)(a)'s maximum-penalty-advisement requirement. *Id.* at ¶ 22. Accordingly, the offender was required to demonstrate prejudice based on the trial court's failure to provide a more detailed advisement of all that the reporting requirements entail, and that prejudice must be "established 'on the face of the record.'" *Id.* at ¶ 24, quoting *Hayward*, 139 Ohio St.3d 238, 2014-Ohio-1913, 11 N.E.3d 243, at ¶ 26, and *Wagner v. Roche Laboratories*, 85 Ohio St.3d 457, 462, 1999-Ohio 309, 709 N.E.2d 162 (1999). In this context, prejudice is defined as a defendant demonstrating that he would not have entered the plea had he been more thoroughly informed of the sex-offender-classification scheme. *Id.*

{¶ 20} Stennett acknowledges that he must demonstrate prejudice from the face of the record, and in this context, Stennett claims that although the trial court advised that pleading guilty included him being designated as a Tier III sex offender with a lifetime registration requirement,

> [h]e was unaware that that meant he would be placed on a community notification list and the public and his immediate neighbors would be advised he was a sex offender; that he would be unable to be located near a school or that he would be subject to verification requirements and could face serious additional felony charges for not strictly complying therewith.

Stennett's supposed lack of knowledge solely rests on his appellate argument. Nothing from the face of the record demonstrates that Stennett was unaware of the full extent of the reporting requirements or that those requirements were material to his decision to plead guilty.

{¶ 21} From the face of the record, the trial court expressly asked if Stennett understood the requirement as presented:

> THE COURT: Now I'm going to go over your duties to register as a sex offender once you've entered your plea but I'm going to tell you before you enter your plea that the sexual battery carries with it a tier 3 registration which is for your lifetime with in-person verification every 90 days. Okay?
>
> THE DEFENDANT: Okay.
>
> THE COURT: I just want to make sure that you know everything before you enter your plea. And then I'll go through the details of it later, okay?
>
> THE DEFENDANT: Yes, your Honor.

If Stennett's guilty plea was based on more thorough knowledge of the reporting requirements, and not the fact that his guilty plea reduced the severity of his crime from a first-degree felony rape to a third-degree felony sexual battery, the importance of the reporting requirements could have been made part of the record at that time. Instead, nothing demonstrates that more information regarding the reporting requirement, beyond knowledge of the lifetime duration, affected his decision to plead guilty. In fact, after the more thorough discussion of all the reporting requirements was had before the sentence was imposed, tr. 43:23-46:13, Stennett never questioned the trial court about the extent of the reporting requirements, or how the full impact of the requirements affected his earlier decision to plead guilty.

{¶ 22} Although the best-practices approach would include a more thorough advisement in all cases during the plea colloquy, the record does not demonstrate

that Stennett was actually unaware of the extent of the reporting requirement or that his knowledge would have impacted his decision to plead guilty to the lesser offense that carried the same reporting requirements as the more severe offense amended based on the plea deal. Stennett's appellate argument appears to simply presume that fact from the absence of an advisement alone, an assumption that the Ohio Supreme Court in *Dangler,* 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, could have likewise made but instead found no prejudice had been demonstrated.

{¶ 23} Because the face of the record does not demonstrate that Stennett would not have pleaded guilty to the sexual battery had he known of all the collateral consequences arising from the lifetime sex offender reporting requirement before entering the guilty plea, he has not demonstrated the existence of prejudice for the purposes of vacating the guilty plea. The fourth and final assignment of error is overruled.

{¶ 24} Affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, ADMINISTRATIVE JUDGE

MICHELLE J. SHEEHAN, J., CONCURS IN JUDGMENT ONLY;
LISA B. FORBES, J., CONCURS IN JUDGMENT ONLY